# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**PAUL R. BAXLEY,**

    **Petitioner,**

**vs.**                                            **CASE NO. 4:04CV54-MMP/AK**

**JAMES R. MCDONOUGH,[1]**

    **Respondent.**

_____/


## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner is represented by counsel and has paid the filing fee. Respondent has filed his response, Docs. 14 & 16, and Petitioner has filed a reply. Doc. 17. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the habeas relief be denied.

---

[1] James Crosby is no longer the Secretary of the Florida Department of Corrections, and his replacement, James R. McDonough, who has physical custody of Petitioner is hereby substituted in his stead.

**BACKGROUND**

The petitioner, Paul Baxley, was charged with one count of sexual battery committed between May 2 and 3, 1999.  Doc 16, Ex. A.  Charles Lammers was appointed to represent defendant, and trial began on March 27, 2000.  Doc 16, Ex. B.

At the start of the trial, a private bench conference was held in which Lammers said he had discussed his defense strategy with Petitioner and they had agreed to concede guilt for the lesser charge of sexual act with a certain minor.  Doc. 16, Ex. B at 4-5.  The court questioned Petitioner on the record if he had discussed this in detail with his attorney, if he understood the consequences, and if he was knowingly aware of what he was agreeing to.  To all questions, Petitioner answered, "Yes, sir."  *Id*. at 5-6.  Mr. Lammers agreed that he and Petitioner both thought this strategy was in Petitioner's best interest.  *Id*. at 6.  Lammers advised the court that although he felt "very peculiar discussing this with the Court under these circumstances," *id*. at 6, he believed the Florida Supreme Court demanded that in the situation where a defendant conceded guilt, the court must conduct such an inquiry.  *Id*. at 6-7.

During opening arguments, Lammers presented the theory that the victim was not sexually battered by Petitioner, but rather, the victim was a troubled teenager who made these allegations in an attempt to leave Petitioner's home and go somewhere closer to her friends.  *Id.* at 22-23.

In its case in chief, the State presented the victim as its first witness.  On direct examination, she testified that at the time of the incident she was 17 years old and lived with her aunt and uncle, the Bugbees.  *Id*. at 32.  Petitioner, the victim's first cousin, was also living in the home.  *Id.* at 33.  According to the victim, on the night of the incident, she was in bed asleep and awoke to Petitioner kissing her on the breast.  *Id*. at 35-36.

    Q    What happened next?

    A    I asked him what he was doing, and he just told me to be quiet. I told him no. I told him to stop, and then he said that I wanted it just as bad as he did.

    Q    Did he stop?

    A    No.

    Q    What did he do next?

    A    He took off my clothes, my shorts.

* * *

    Q    Could you please tell us in your own words what type of sexual contact the defendant had with you?

    A    He put his penis in my vagina.

* * *

    Q    Did Paul Baxley ask for your consent before he put his penis in your vagina?

    A    No.

    Q    Did you give Paul Baxley consent before he put his penis in your vagina?

    A    No.

*Id*. at 36-41.

The victim testified that she did not report the incident to the police because she was scared and did not know what to do. *Id*. at 42.

During cross examination, the victim admitted that she never called out during the incident because she did not know what to do and was in shock. *Id*. at 45. She stated that about a week after the incident she finally told a friend what had happened. *Id*. at 47. Later she told a

worker for the Children's Home Society, knowing that he would be required by law to report it. *Id*. at 50.

After questioning the victim about the incident, Petitioner's counsel asked her about her relationship with the Starlings, her previous foster family who are also an aunt and uncle. *Id.* at 51.  The victim said that she did not remember if the Starlings liked her boyfriend at the time and that she left the Starlings because her uncle "was saying things to [her] that he shouldn't have been." *Id*. at 52.  Counsel then questioned her about her relationship with her next foster family, the Merediths. *Id.* at 53.  When asked if she ever had difficulty with the Merediths, she replied no. *Id*. at 54.  Next she was questioned about her friends, *id*. at 55-57, and problems she might have had with the Bugbees. *Id*. at 58-59. When the State objected, questioning the relevancy of the line of questioning, counsel responded:

> Mr. Lammers:   In several of these instances, I have been able to get her to admit or deny things that go to her credibility in front of this jury, particularly with the Merediths and particularly with the Starlings, but what I'm about to show is is that she told her aunt and uncle she was going to visit this girl in the hospital when in fact she instead went to Keystone Heights and stayed with Shannon, which goes to motive to fabricate these charges and be taken out of the home to get back to Keystone.

*Id*. at 60.

The court overruled the objection, and counsel was allowed to continue this line of questioning. *Id*. at 61.  Counsel then asked the victim why she was testifying, getting her to affirm that she was threatened by the prosecutor with arrest if she did not testify at the trial. *Id*. at 64.  On redirect, the victim denied fabricating the incident between her and Petitioner. *Id*. at 65.

**No. 4:04cv54-mmp/ak**

The State next called Petitioner's mother, Carmella Bugbee. She testified only to the fact that her son was 25 years old at the time of the incident. *Id*. at 71-72. Defense counsel had no questions for Ms. Bugbee. *Id*. at 72.

The State's final witness was Stan Hoover, who investigated and interviewed Petitioner. *Id*. at 76. A taped interview was played for the jury, in which Petitioner initially denied having sex with the victim. *Id*. at 81-86. After talking off tape, Petitioner then admitted as follows:

| | |
|---|---|
| Mr. Baxley: | I came in the house after a party. I had a lot to drink. I went into her room, laid down on the floor next to her bed. I reached up and I was fondling her until she woke up. When she woke up, I climbed into the bed, was laying down next to her, and we started kissing, and she had her arms around me. I don't remember. |
| Investigator Hoover: | Did you inset your penis into her vagina? |
| Mr. Baxley: | Yes. She had her arms around me. We were kissing and I inserted my penis into her vagina, a couple of minutes later she told me to stop. She told me to stop. She pushed me away, and I got up and left. I left the room and went to my bed. |
| Investigator Hoover: | Do you remember her saying no? |
| Mr. Baxley: | Yeah. As soon as she said no, I left. |

*Id*. at 93-94.

Defense counsel cross-examined Investigator Hoover about his questioning of Petitioner and psychological pressure tactics used in the interview. *Id*. at 96-103.

After the State rested its case, the defense moved for a judgement of acquittal, which was denied. *Id*. at 103-106. Lammers then announced that Petitioner was not going to present any evidence and rested his case. *Id*. at 106.

**No. 4:04cv54-mmp/ak**

In closing arguments, the defense again stated this incident was not sexual battery:

>  Mr. Lammers:       There was no rape in this case. What this was was a case of consensual sex in which a young troubled teenage girl trying to get back home to Keystone Heights let things spiral out of control.

*Id*. at 113.

The jury found Petitioner guilty of sexual battery. *Id*. at 152; Doc. 16, Ex. C. Subsequently, he was sentenced to 97 months imprisonment and declared a sexual predator. Doc. 16, Ex. D. Petitioner then filed a timely notice of appeal, arguing that the trial court did not adequately inquire if the defendant was aware he was pleading guilty to another charge in the case and if he actually consented to the defense strategy. Doc. 16, Ex. E. The court of appeal affirmed Petitioner's conviction and sentence on September 13, 2001. Doc 16, Ex. H & I.

Petitioner filed a motion for post-conviction relief on July 24, 2002, stating that the judgement was unlawful because of ineffective assistance of counsel due to counsel's failure to call witnesses to support his opening statement and closing argument and his failure to cross-examine a prosecution witness, Ms. Bugbee. Doc. 16, Ex. J. More specifically, Petitioner argued:

> Trial counsel suggested that the alleged victim had a troubled relationship with her current guardians and some of her previous caretakers....In his opening statement trial counsel stated that it was the alleged victim's desire to live independently with her friends, free from any adult or parental supervision, that facilitated the report of sexual battery. However, although trial counsel referred to these things in his opening statement, he failed to sufficiently support his statement by calling any witnesses on the behalf of [Petitioner] and by failing to cross-examine [Ms. Bugbee]....

*Id*.

**No. 4:04cv54-mmp/ak**

The state responded, countering that counsel's cross-examination of the victim served to support his opening and closing and that cross-examination of the prosecution's witness, Ms. Bugbee, was limited by the rules of evidence because she was only called to testify about Petitioner's age.  Doc. 16, Ex. L.

In his reply, Petitioner maintained that counsel did not adequately cross-examine the victim and committed a gross failure in not calling George Starling, the victim's previous foster parent, to testify.  Doc. 16, Ex. M.  Mr. Starling's affidavit states that the victim falsely accused him of soliciting oral sex from her after he told her he did not want her to see her boyfriend anymore, and that he was never contacted by Petitioner's counsel.  *Id*.  This information directly conflicted with the testimony of the victim, who said she did not remember if her uncle liked her boyfriend.  *Id*.  Ms. Bugbee also signed an affidavit saying she provided Petitioner's counsel with information that directly contradicted the victim's testimony regarding whether she was upset about not being able to visit her friend.  *Id*.

On July 11, 2003, the trial court denied Petitioner's motion for post-conviction relief, stating that the allegations raised did not meet the standard for ineffective assistance of counsel under the *Strickland* test.  Doc. 16, Ex. N.  It also stated that even if the allegations were true "the Court can not find any prejudice which leads to a reasonable probability the jury verdict would have been different."  *Id*.  As to counsel's failure to cross-examine Ms. Bugbee or to call her in Defendant's case in chief, the court concluded that cross-examination on any issue other than Defendant's age would have been beyond the scope of direct and that calling Ms. Bugbee "in the defense case-in-chief would have resulted in forfeiture of defense opportunity for opening and closing final arguments, an especially advantageous procedure when the defendant

**No. 4:04cv54-mmp/ak**

does not testify." *Id.* The court analyzed Ms. Bugbee's proposed testimony and found her "alleged helpful testimony" to be "essentially cumulative or unnecessary." *Id.* As to counsel's failure to call Mr. Starling, the court found that counsel was not ineffective for not calling him because "it is doubtful this evidence would have been admissible" because the accusation against Mr. Starling that he had solicited oral sex with the victim was "very dissimilar" from the allegation of sexual battery in the present case. *Id.* The court concluded:

> [A] common sense review of defendant's own inconsistent statements and admissions to law enforcement provides the most damning evidence against him on the consent issue when compared to possible motives of victim to testify that there was no consent. This is apparent in the trial record. Therefore, give the questionable admissibility of such evidence and the defendant's own statements, there is certainly no *likelihood* that defense counsel's attempt to introduce the Uncle's testimony would have changed the outcome of this trial.

*Id.* As a final reason for rejecting Petitioner's arguments, the court stated that "there was enough testimony elicited from the victim to support and argue the defense theory anyway. Effective assistance of counsel does not equate with a perfect trial, or effective results, i.e., a verdict of not guilty." *Id.*

Petitioner filed a notice of appeal on the ground that the court erred in denying Petitioner an evidentiary hearing and that Petitioner's rights under the Sixth and Fourteenth Amendments were violated. Doc. 16, Ex. O. On December 19, 2003 the court of appeal affirmed the denial of Petitioner's motion for post-conviction relief. Doc. 16, Ex. Q & R.

On February 26, 2004, Petitioner filed the instant petition for writ of habeas corpus based upon ineffective assistance of counsel. Doc. 1. More specifically, Petitioner charges that counsel was ineffective for failing "to sufficiently support his opening statement" in that he should have called Ms. Bugbee and Mr. Starling, both of whom would have offered testimony to

**No. 4:04cv54-mmp/ak**

undermine the victim's credibility. *Id*. at 14-16. Respondent concedes that the petition is timely and that the claims have been exhausted. Doc. 14 at 6 &15-16. He denies that Petitioner is entitled to relief, however, because the state court's ruling was "legally correct under Strickland." *Id*. at 27.

**DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

**No. 4:04cv54-mmp/ak**

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The fact that the state court did not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002).

Because Petitioner's claims involve allegations that his counsel was ineffective, a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

**No. 4:04cv54-mmp/ak**

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's]

**No. 4:04cv54-mmp/ak**

>inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

In this case, Petitioner has raised claims of ineffective assistance of counsel which were plainly and thoroughly adjudicated on their merits in state court. Thus, as previously noted, the question for this Court is whether the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**No. 4:04cv54-mmp/ak**

Having carefully considered the matter, the Court finds that the state court's ruling on Petitioner's ineffective assistance of counsel claims was not contrary to or did not involve an unreasonable application of clearly established Supreme Court law, and the state court did not base its decision on an unreasonable determination of the facts in light of the evidence presented at trial. The post-conviction court meticulously examined the record evidence with the *Strickland* requirements in mind and made a well-reasoned, well-supported decision. Even if this Court presumes, as the state court did, that counsel acted deficiently in failing to call additional witnesses, the Court agrees that there is not a reasonable probability that the outcome of the proceedings would have been different.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Petitioner's petition for writ of habeas corpus, Doc. 1, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this **8th** day of June, 2006.

s/ A. KORNBLUM
ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may**

**No. 4:04cv54-mmp/ak**

**respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:04cv54-mmp/ak**